(C. D. 1128)

C. S. EMERY & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 10, 1948)

*Hubert S. Pierce* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William A. Vitale* and *Harold L. Grossman*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: Certain feedstuffs imported from Canada were invoiced as ground oat hulls. The merchandise was returned by the appraiser as "ground oat hulls and oat meal." Upon such description the collector assessed duty thereon as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930. The importer claims that the merchandise is dutiable at 5 cents per one hundred pounds under paragraph 730, as amended by the Canadian Trade Agreement, T. D. 49752, as ground oat hulls, or at 5 per centum ad valorem under the same paragraph, as amended by T. D. 49752, as byproduct feeds obtained in milling wheat or other cereals. Alternatively, it is further claimed that the merchandise is screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds, ground or unground, and as such properly dutiable at 5 per centum ad valorem under paragraph 731, as amended by T. D. 49752.

At the trial a feed manufacturer, connected with a competitor of the shipper of the goods herein, testified for the plaintiff substantially as follows: The ground oat hulls in question are produced from the class of oat grain used for cereal oatmeal. The small oats, weed seeds, chaff, and other seeds are screened out, and the oats graded for size. The oats are then heated in order that the hull may be more readily removed by mill stones or rubbing machines used for that purpose. During such rubbing process, the oat dust and hulls are screened off. The hulled oats or oat groats are thus prepared for steaming and rolling into oatmeal. The remaining material, removed by all the screening processes from the oats and the oat groats, consists of pin oats, immature or imperfect oats, kernels broken in the rubbing process, the fuzz or so-called feathers, consisting of a hair-like material which is between the hull and the groat, and the oat hulls. This material, after grinding, constitutes the imports in question.

The feed-production manager of the shipper testified on behalf of the plaintiff that he is familiar with the rolling of oats for the manufacture of oatmeal for human consumption and the processes are exactly as outlined by the previous witness; and that the foreign seeds, the small oats, the chaff, etc., taken from the oats in the manufacture of oatmeal, are ground and sold. The product in question is such material.

The witness further testified that such material is generally known in Canada as oat hulls or oat feed, and that the correct name is oat mill feed; that a combination of the oat hulls, oat middlings, and oat shorts, mixed with the screenings of the oats, is usually referred to as oat hulls.

The documentary evidence submitted by the plaintiff consists of several copies of letters, addressed by the shippers to the ultimate

consignees, stating that ground oat hulls had been shipped to them; certain tags attached to some of the bags at the time of entry, bearing thereon notations that the contents were a product of Canada and consisted of ground oat hulls or ground grain; and a book containing a definition of oat mill feed, as adopted by an association of feed dealers, known as the Association of American Feed Control Officials, Inc. These documents were admitted in evidence on behalf of the plaintiff. However, we find them to be of little value in establishing the merchandise to be oat hulls.

On behalf of the Government, the official analysis determined by the U. S. Customs Laboratory in Boston, stating the quantities of moisture, ash, fat, crude fiber, and protein in the merchandise, is also of little value to the court in the absence of corroborative and explanatory evidence tending to establish that such analysis would not be the analysis for oat hulls.

The Tariff Act of 1930, as amended by the Canadian Trade Agreement, T. D. 49752, provides as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 730 | Bran, shorts, by-product feeds obtained in milling wheat or other cereals | 5% ad val. |
| 730 | Hulls of oats, barley, buckwheat, or other grains, ground or unground | 5¢ per 100 lbs. |
| 731 | Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground or ground | 5% ad val. |

The goods were assessed under that portion of paragraph 1558 of the Tariff Act of 1930 reading as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Counsel for the plaintiff relies chiefly upon the claim that the merchandise is classifiable as oat hulls, for the reason that it is the usual product of the hulling of oats. Two of the cases cited in support of that classification are *United States* v. *McGettrick*, 139 Fed. 304, and *Tower & Sons et al.* v. *United States*, 10 Ct. Cust. Appls. 259, T. D. 38620. In the *McGettrick* case, oat hulls and other component refuse materials from the manufacture of oatmeal were each ground separately, and thereafter mixed together. Nevertheless, the court held the product properly dutiable as oat hulls. In the *Tower* case, the merchandise was the coarse outer envelope or hulls of oats used in the manufacture of oatmeal and rolled oats. The hulls thereof were ground off as a byproduct and included other material also separated from the oats during the same operation of hulling and screening. The court held the material dutiable as oat hulls rather than as a nonenumerated

manufactured article.   Commenting upon the history of the provision, the court stated:

It is true that in June, 1899, the Board of General Appraisers declined to sustain the ruling of the department and held that the finely pulverized "refuse," resulting from the manufacture of oat products and consisting of "oat flour," "oat middlings," "oat bran," "oat hulls," and "oat dust" ground together, was dutiable as a non-enumerated manufactured article (T. D. 21262).   About the year 1904, however, the collectors again classified as "oat hulls" ground oat husks mixed with oat dust, particles of meal, and other by-products, resulting from the manufacture of cereals; and the board again ruling that the commodity was dutiable as a non-enumerated manufactured article (T. D. 25235), an appeal was taken by the Government to the circuit court, which reversed the board and sustained the collectors' classification.—United States v. McGettrick (139 Fed., 304).   The decision in that case was to the effect that the importation was a by-product consisting merely of broken hulls and was within the designation of "oat hulls," inasmuch as they could not be removed from the seed and brought to the condition of oat hulls without breaking them.   The decision in the McGettrick case was followed by the board in T. D. 26836, and until the year 1919 it was the settled administrative practice to classify merchandise such as that under consideration as "oat hulls."   On the 8th of April, 1919, the Treasury Department reversed itself, and for the first time in the history of the provision for "oat hulls," which theretofore had been twice reenacted, collectors were instructed to assess all "ground oat hulls" as ·a nonenumerated manufactured article—a classification which apparently under the act of 1913 carried a higher duty than that previously imposed on "Oat hulls."—(T. D. 37966.)   The department revoked that ruling within six months after it was made, however (T. D. 38150), and directed the collectors to classify both ground and unground oat hulls as "oat hulls."   The revocation of T. D. 37966 must be regarded as a frank admission that the position taken by the department on the· 8th of April, 1919, was untenable, and that the administrative practice which was discontinued on that date should not have been interrupted.

From the foregoing facts we conclude first, that it was the administrative practice from March, 1899, to April, 1919, and is now the practice, to classify merchandise such as that in question as "oat hulls;" second, that the provision for "oat hulls" having been twice reenacted after receiving a final judicial interpretation, which included both ground and unground oat hulls, that interpretation must be held to have been approved by Congress; third, that irrespective of its proprietary designation, the by-product produced by manufacturing processes that are necessary for the stripping of the husk from the groat or kernel of oats, is within the common ordinary meaning of the term "oat hulls," and that whether ground or unground it is generally and uniformly so known to the trade.

In the case of *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. 34, C. A. D. 168, the appellate court had before it the question of classification of a similar material, the residue resulting from the hulling of oats.   It was a mixture of that part of the material known as "Banner feed" consisting of oat middlings and oat shorts, and oat hulls.   The material contained 78 per centum oat hulls and 22 per centum Banner feed.   After the mixing thereof, the resulting material was ground.   The collector had assessed the product for duty as "oat hulls."   Counsel for the plaintiff, however, conceded that the merchandise was not oat hulls and the Government accepted such

concession. The court held that a mixture of a byproduct such as Banner feed with oat hulls, a distinct tariff entity, was a nonenumerated manufactured article. In that case, the court commented upon the tariff history of such product, noting that the *McGettrick* case, *supra*, held a product consisting of oat hulls ground and mixed with oat dust, particles of meal, screenings, or other byproducts from the manufacture of cereals for the table, was classifiable as oat hulls. It made no reference, however, that the import before the court would come within that classification, but held that as oat hulls were specifically provided for as a separate tariff entity, the Congress did not intend the product there at issue to come within the provision for "by-product feeds obtained in milling" oats. The *Tower* case, *supra*, holding a similar product to be, in fact, as well as commercially, known as "oat hulls" was not referred to by the court, probably in view of the concession of counsel.

The product before us consists of the entire screenings of oats used in the manufacture of oatmeal. The evidence establishes it is not a mixture of oat hulls and oatmeal. It has been judicially determined by the courts to be in fact, as well as commercially, known as oat hulls. Since the ruling to that effect in the *Tower* case, *supra*, the Tariff Act of 1930 was passed, and many amendments to the law have been made by trade agreements and congressional action. No change in the interpretation of the courts has been made, however, in the tariff law or amendments thereto which would affect the courts' interpretation of the term "oat hulls." Therefore, it must be accepted that material such as was the subject of decision in the *Tower* case, *supra*, is still dutiable as oat hulls, under the *eo nomine* provision therefor. The fact that fluctuations in the market of oats or oat products cause it to be more profitable to the importer or the Government from the duty standpoint to assess duty upon same as a nonenumerated manufactured article, or *vice versa*, should not become a controlling factor in the classification of merchandise.

It might be noted here that the entries in the *Myers* case, *supra*, show that the goods were imported during the years 1935 and 1936, when the price of oats and oat products were particularly low, and the duty of 10 cents per pound prevailing at that time was considerably higher than an ad valorem rate of 20 per centum under the nonenumerated manufactured article provision. The failure of Government counsel to uphold and defend the classification of the collector rather than accept the importer's concession should not have the effect of establishing a precedent to classify as nonenumerated manufactured articles a material which is in fact, as well as commercially, regarded as oat hulls from being classified under the *eo nomine* provision therefor. However, on account of separating, apparently, the oat hulls from the remaining screenings and the mixing thereof in definite

proportions with the screenings, the product in the *Myers* case, *supra*, may be regarded as an exception, and not controlling of the issues here presented where all of the screenings from the oat groats, including the hulls, were ground together. In *United States* v. *Sheep Shearers Mdse. & Comm. Co.*, 23 C. C. P. A. 146, T. D. 48009, the appellate court stated that a common meaning of a word which has been judicially declared will be adhered to until change in the law requires revision. There has been no change in the law which would exclude the material before us from classification as oat hulls.

Counsel for the Government contends that the merchandise is a nonenumerated manufactured article principally because the product has been ground. We think that counsel could agree that the product is a manufactured article because it is the result of manipulation and has a new name and use different from the original product. The grinding thereof is entirely immaterial. The plaintiff does not claim that the material is a waste and we fail to see the necessity of the Government counsel's argument that the grinding thereof removes the material from the state of waste to that of a manufacture, inasmuch as the provision for oat hulls specifies that it includes such as are ground, as well as the unground product. The question at issue is whether this manufactured product is more specifically provided for as oat hulls, ground, or as a byproduct feed obtained in milling. If not so specifically provided for under either of the foregoing paragraphs, should it become classifiable under the provision for screenings, ground or unground, or relegated to the catch-all nonenumerated paragraph for manufactured articles?

From the evidence before us and in view of the history of this provision for oat hulls, and following the *Tower* case, *supra*, we hold that screenings of the oat groats used in the manufacture of oatmeal are more specifically provided for as oat hulls, ground, than under any of the other provisions claimed in the protest, or as assessed by the collector. Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries and make refund in accordance with law.